[S. F. No. 1088.   Department Two.—April 12, 1899.]

CHARLES JOURNE et al., Respondents, v. DAVID HEWES, Appellant.

LEASE—OPTION TO PURCHASE—NOTICE AFTER DEATH OF LESSOR—ABSENCE OF TENDER—LIABILITY FOR RENT.—Under a lease containing an option to purchase, the relation of lessor and lessee, and the liability of the lessee for rent, continues until a tender or offer to pay the purchase money is made; and a mere notice of an intention to purchase the property given to a son and former agent of the lessor, after the lessor's death, and subsequently to the administrator of the estate of the deceased lessor, and notice of an intention "to pay for the same when the probate proceedings are fully completed, and the owner can give title to the same," does not create the relation of vendor and purchaser, or suspend the liability of the lessee for rent.

ID.—SPECIFIC PERFORMANCE—WAIVER OF OBJECTION—EFFECT OF ADJUDICATION.—A specific performance of the option to purchase adjudged by the superior court having jurisdiction of the estate, nearly one year after the expiration of the original lease, the terms of which had been continued from month to month by the administrator, objection to the specific performance being waived by the administrator and heirs, does not determine that the option to purchase was exercised at or before the termination of the original lease, or that the relation of vendor and purchaser was then constituted.

ID.—LIABILITY FOR RENT NOT INVOLVED.—The liability of the lessee for rent from month to month, prior to the action for specific performance, was not necessarily involved in that action, and if not actually litigated therein, is not concluded by the decree rendered in the action.

Id.—IMPLIED CONTRACT FOR STIPULATED RENT—VALUE OF USE AND OCCU-
PATION—FINDINGS.—In an action upon an implied contract to pay
the monthly rent stipulated in the lease, under a tenancy from
month to month after the expiration of the lease, if the court
finds that such implied contract existed, it becomes immaterial
to find upon an issue as to the value of the use and occupation.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco and from an order denying a new·
trial.    J. M. Seawell, Judge.

The facts are stated in the opinion.

William B. Sharp, for Appellant.

John A. Stanly, Garrett W. McEnerney, Henry W. Bradley,
Stanly, Hayes & Bradley, and Stanly, McKinstry, Bradley &
McKinstry, for Respondents.

CHIPMAN, C.—Action for rents for certain premises situated
in the city of San Francisco.   The trial was by the court, a jury
having been waived, and plaintiffs had judgment, from which
and from the order denying his motion for a new trial defend-
ant appeals.   The pleadings are verified.   The facts appear
from the findings to be as follows: Plaintiffs' intestate was the
owner of the premises, and on November 1, 1873, by an agree-
ment in writing, leased them to defendant for the period of
twenty years (i. e., to November 1, 1893), at the monthly rental
of one hundred and forty dollars, payable the first day of each
month in advance; defendant entered into possession under the
lease and continued in possession until December 22, 1894;
plaintiffs' intestate died February 16, 1893, and on December
27, 1893, A. C. Freese duly qualified and became administrator
of the estate of deceased, and so continued until January 7,
1895, when all of the estate, including all claims against de-
fendant, was distributed to plaintiffs; defendant occupied the
premises to November 1, 1893, under the lease, and thereafter
and until December 22, 1894, he occupied the premises "under
an agreement made between these plaintiffs, the said A. C.
Freese, as administrator as aforesaid, and the said defendant,
under the terms whereof the said defendant agreed to hold
said premises as a tenant from month to month upon the same

terms and conditions as those contained in said lease aforesaid." The agreement upon the part of plaintiffs covered the period from November 1, 1893, to December 22, 1894, "and on the part of Freese from the issuance of letters to him and to December 22, 1894"; defendant became liable for thirteen and seven-tenths months' rent at one hundred and forty dollars per month, "commencing November 1, 1893, and ending on the first day of January, 1895." (In a subsequent finding the expiration date is December 21, 1894, inclusive, and rent is computed to include that date and no further.) The rent amounted to nineteen hundred and eighteen dollars, "on account whereof and of his occupation . . . . during said period, defendant has paid the sum of seven hundred dollars and no more"; said seven hundred dollars was for rent from November 1, 1893, to March 31, 1894, inclusive. At this point it should be stated that the lease contained an option to defendant to purchase. That part drawn in question reads: "At the expiration of the term of this lease the said party of the second part (defendant) shall have the privilege of purchasing, if he desires so to do, the premises above described for the sum of thirty-five thousand dollars, . . . . and upon the payment or tender thereof the said party of the first part shall and will execute, acknowledge, and deliver a good and sufficient bargain and sale deed . . . . to the said party of the second part." It is then provided that if defendant "decline to purchase, . . . . then the buildings, which have been erected upon said premises by said party of the second part, . . . . shall be appraised (the method is provided for), . . . . and first party agrees to pay second party the appraised value thereof." The lease, by its terms, binds the heirs, executors, administrators, and assigns of the respective parties. Bearing upon this option to purchase the court finds as follows: Defendant became the owner of the premises December 22, 1894; he never held possession as owner prior to that date, but "was in possession thereof solely as tenant"; no part of the seven hundred dollars above-mentioned was paid as compensation for defendant's delay in completing the purchase under his privilege to do so; defendant was neither ready nor able to complete the purchase of the premises until December 22, 1894, "and neither paid nor tendered the purchase

price nor any part thereof before that date"; "defendant did not become the owner of the premises November 1, 1893, but became the purchaser thereof as of and on the day of the delivery of the deed to him and the payment by him of the purchase price, which was the twenty-second day of December, 1894."

1. Appellant's principal contention is that the court erred in finding that defendant was a tenant of Freese or the plaintiffs after the expiration of the lease under an agreement to pay rent.

On October 31, 1893 (the lease expired that day), defendant wrote two letters—one to defendant Charles Journe, son of plaintiff's intestate, and one to the London, Paris and American Bank, agent of deceased in his lifetime—in the first of which he said: "I write to express my desire and election to purchase the lot of land described in the lease now existing between your father, Jean Marie Journe, and myself, . . . . and to pay for the same when the probate proceedings are fully completed, and the owners can give title to the same." In the other he expresses his desire in about the same terms, concluding, "I pay for the same when the owners can give title." The evidence shows that defendant remained in possession of the premises after the lease had expired and until December 22, 1894, when he received a deed from administrator Freese through proceedings instituted October 27, 1894, in the probate court, on petition of defendant, under section 1598 *et seq.* of the Code of Civil Procedure. Defendant claims that on and after November 1, 1893, the relation of vendor and purchaser existed between the parties and not that of landlord and tenant, because, as he claims, he exercised his privilege of purchasing under the agreement. Plaintiffs' contention is, that there was no legal duty put upon the administrator to take any steps toward passing title to defendant until he had notified the administrator that he was ready, able, and willing to consummate the purchase, and that no valid tender was made by defendant until December 22, 1894, to which time he was tenant. There is but little oral evidence bearing upon the fact as to the actual relation of defendant to the property after the lease expired. The court found, and I think there was evidence to sustain the finding, that defendant paid as rents, at the lease-

hold rate, for five months, one hundred and forty dollars per month to April 1, 1894. Defendant testified, but he made no explanation of his payment of the sum of seven hundred dollars to the administrator, which the court finds was for rents. His oral explanation of his verbal offer to take the property stated to the administrator after the latter received his letters, shows that when he gave the notice it was coupled with the statement that he was not then prepared to make payment. In addition to the oral proofs, plaintiffs rely upon the presumption supplied by sections 1945 and 1946 of the Civil Code. The only witness called by defendant was administrator Freese. From his testimony it is plain enough that the delay on the part of defendant in completing the purchase arose from stringency in the money market and defendant's inability to raise the amount required. He testified as follows: "I am the public administrator. I had charge of the Journe estate as public administrator. I collected the rents. Q. I am not asking you about that, but whether he (defendant) elected to purchase under that lease? A. Not immediately, when I took charge of the property. Q. Well, at any time? A. Yes, sir; many times I have had conversations with Mr. Hewes with regard to it. Q. And do you remember that I (Hewes' attorney) came to you, stating that I had come from Mr. Hewes, and at his request, in regard to the matter? A. I remember you coming there, yes, sir. Q. Do you remember my stating to you, on or about the first day of April, that he elected to purchase under that lease? A. I think somewhere thereabouts. I think you came there and stated that you were willing to take the property and wanted to take it and would take it, but that you were retarded on account of finances, and had to make arrangements to get the money to pay for it, and, of course, the money was not turned over until a long time afterward." He was asked if anything was said as to taking steps to apply to the probate court for authorization to convey, to which he answered: "No, sir. I do not think so, because Mr. Hewes repeatedly spoke to me and was negotiating for a loan and was trying to get the money." Witness was asked: "Q. Was there anything said at that time, at that conversation, about Mr. Hewes becoming a tenant of the estate of Mr. Journe?

A. O, I do not think so; I think the whole conversation was that Mr. Hewes would take the property, and as soon as it would be convenient for him to take it that he would take it." .He was asked if anything was said about the delay in completing the purchase, and answered: "Well, it seemed it was hardness of times and one thing and another." There is no evidence of an express agreement to pay rent at the old rate pending the time when defendant would be able to pay for the property; and the court did not find that there was such an agreement. Defendant paid rent at the leasehold rate for five months to March 1, 1894. The rent for February, 1894, was paid May 23d, and the last payment of rent was made as late as July 19, 1894, for one month, to April 1, 1894. There is no explanation of the failure to pay rent after April 1st, and there is not the slightest evidence that payments were made other than for rent and at the former rate. It seems to us that the evidence fully justifies the implied agreement found by the court. Defendant contends that the presumption raised by the statute above referred to is not conclusive (citing *Rogers v. Duhart,* 97 Cal. 500); and that the presumption in the present case is overcome by the privilege · of purchase given in the lease, which privilege defendant claims to have promptly exercised, and in doing so established the relation of vendor and purchaser. Furthermore, it is claimed that defendant filed his petition in the probate court for specific performance, in which proceeding plaintiffs and the administrator appeared; that the court decreed the performance of the contract, and "this decree was complied with by the execution of the conveyance and the payment by defendant of the amount ordered to be paid by him." It is claimed that "this decree conclusively established the fact that subsequent to November 1, 1893, the relation between the parties was that of vendor and purchaser, and not that of landlord and tenant; and "that from these facts the law cannot imply an agreement on the part of defendant to pay rent." (Citing Wood on Landlord and Tenant, sec. 16.) The petition referred to was filed by defendant October 27, 1894, and is set forth in the transcript as part of plaintiffs' evidence, as is also the decree of the court; and it was admitted "that under said petition said deed was executed." The petition stated: "That peti-

tioner desires to purchase said property in said agreement (the lease) described according to the terms of said agreement, and he hereby tenders and offers to pay therefor the sum of thirty-five thousand dollars, . . . . and by reason of the premises petitioner is entitled to a specific performance, . . . . to wit, a grant, bargain, and sale deed conveying the fee of the said premises . . . . to petitioner upon the payment by him of the said sum of thirty-five thousand dollars." The decree directed conveyance to be made upon the payment of the sum above mentioned. These proceedings by no means established the fact that on November 1, 1893, defendant fully exercised his option and put himself in the relation of a purchaser; neither the petition nor the decree had any such retroactive effect. The decree established only the fact that at the time it was entered the heirs-at-law of deceased and the administrator consented that defendant might become the purchaser upon the payment of thirty-five thousand dollars, but it did not establish the fact, and there was nothing in the petition nor in the decree calling for an adjudication of the fact that defendant had, on November 1, 1893, become the equitable owner or stood in the relation of a purchaser of the land. The owners of the property, by submitting to the proceedings, merely consented that the option to purchase might be treated as still available to defendant. It was clearly a condition of the option that it should be exercised at the expiration of the lease, for, aside from the express conditions of the option, it was provided that, should defendant decline to purchase, the buildings erected by him should belong to the lessor. But this condition might be and was waived by plaintiffs when finally defendant became not only willing but able to purchase, and so notified the administrator. Defendant stoutly contends, however, that the written notices he served October 31, 1893, and the verbal notice to the administrator about April 1, 1894, in themselves established the relation of vendor and purchaser, and were conclusive of the fact. The point is pressed with much zeal and ability, and is contested with equal earnestness and force. We do not think it necessary to follow respective counsel throughout the argument. Among other cases, appellant relies upon *Carpenter v. United States*, 17 Wall. 489. The opinion is by Mr. Justice Strong.

I quote sufficiently to state appellant's position clearly: "Privity of contract is doubtless essential in all cases. But when the defendant has entered and occupied by permission of the plaintiff without any express contract, the law implies a promise on his part to make compensation or pay a reasonable rent for his occupation. In such case, the consent of the owner to defendant's entry, followed by such entry and by subsequent occupation, may be considered equivalent to a demise, or at least *prima facie* evidence of a demise. This is because a demise, with a corresponding agreement to pay rent or make compensation for the use of the property, is consistent with an unexplained entry by the owner's consent, and because it is a reasonable presumption that occupation thus taken was intended to be paid for." After thus lucidly stating the rule under which an implied promise will arise, the learned justice proceeds: "No reason, however, for such an implication exists, when an express contract or an agreement between the parties shows that it was not intended by them to constitute the relation of landlord and tenant, but that the occupation was taken and held for another purpose. And this is shown when the entry has been made in pursuance of an agreement to purchase, whether that agreement is in writing or parol. Such an agreement sufficiently explains the allowed entry, without the necessity of resorting to any implication of a contract other than actually made." It was held in the case that, if the plaintiff was entitled to anything beyond what he received, it was interest on the purchase money from the time possession was taken until the price of the sale was paid. The facts were: That on July, 1863, an army officer, on behalf of the United States, entered into a parol agreement with Carpenter for the purchase and sale of an island in Narragansett bay. In August following the government officers, with the consent of Carpenter, entered into possession of the island and continued in possession until 1866, when the sale was consummated and the consideration paid. Carpenter afterward brought suit in the court of claims for use and occupation of the island, and it was held that he could not recover because the entry was as by a purchaser and not as tenant. The present case differs widely from the Carpenter case. Here the entry was under an agreement to *pay*

*rent,* and the relation of the parties was unquestionably that of landlord and tenant for twenty years, up to the thirty-first day of October, 1893; and, unless the notice of defendant that he desired to avail himself of the option to purchase had the conclusive effect claimed for it, which we do not think it had, the relation of landlord and tenant is shown, by the evidence, aided by the statutory presumption, to have continued until he completed the purchase. If he had tendered the money, or had announced his ability and willingness to take the property so soon as title could be made, and nothing remained to be done but obtain the order of the court, I can see how it might be claimed with reason that he held over as purchaser pending such action. But no such state of facts existed. His notice fails to show a "payment or tender thereof" of the money which the agreement required should be made "at the expiration of the term of the lease." The offer was to purchase the property, "and to pay for the same when the probate proceedings are fully completed and the owners can give title to the same." When this notice was given there was as yet no administrator, and no one authorized to act for the heirs-at-law of deceased; but an administrator was appointed two months later—December 27, 1893. If it may be said that defendant did all that he could reasonably be asked to do before an administrator was appointed, it was incumbent upon him as soon as that officer had qualified to make "payment or tender thereof" and demand his deed. He, however, took no further action until about April 1, 1894, when he notified the administrator that he desired to avail himself of the option, but at the time, for reasons personal to himself, and in fact because he could not then pay for the property, took no steps to purchase, and not until December, 1894, did he make tender of payment and put himself in readiness to pay. Meanwhile, he paid rent for the time before the administrator was appointed and for three months thereafter. Appellant asserts that it is immaterial what the relation of defendant was prior to April 1, 1894, and, seemingly inconsistent with his contention as to the conclusiveness of the written notice, is willing to concede that payment of rents was made to that date, but that thereafter the relation was that of purchaser by virtue of the verbal notice to the administrator.

An examination of the evidence, some of which is given above, will show that defendant only expressed a desire and intention to exercise his option, but at the same time said he was not yet prepared to make payment, i. e., to comply with the conditions of the option. The verbal notice to the administrator was even less conclusive than the written notice served upon persons unauthorized to deal finally with the matter.

Respondent claims that the statute (Code Civ. Proc., sec. 1598) does not give the administrator authority to file the petition, but that it expressly gives the right only to "any person claiming to be entitled to such conveyance from an executor or administrator"; and it is hence argued that it was defendant's duty to commence proceedings under that section. The language used might be construed to limit this right as claimed; but it is not necessary to so hold in the present case. The administrator certainly was not required to take any steps to make the conveyance until defendant had made demand and tender of payment, or at least shown ability and willingness to pay. He did not do this at any time until he filed his petition and obtained the order of the court. We do not see that the doctrine as to when time is of the essence of the contract, and some other doctrines made the subject of discussion, need be particularly examined. Here there was no obligation on defendant to purchase; he reserved only the right to purchase; but the decision to do so rested wholly with him; this right was absolute, provided he complied with the conditions imposed. Whether he was in default or not was a question not raised against his right to purchase when he finally, after much delay, came forward with the money. But this complaisance, in December, 1894, on the part of the owners and the administrator, in itself casts no light upon the relation defendant bore to the property during the preceding twelve months. We are constrained to hold that the evidence satisfactorily shows the relation to have been that of tenant.

2. Appellant claims that not only are plaintiffs barred by their appearance in the proceeding in the probate court and its decree, but by the acceptance of the purchase price without claiming anything further; that the court had jurisdiction to afford complete relief and to order payment of interest or rent in lieu thereof or neither.

Whether in this statutory proceeding, under section 1598 of the Code of Civil Procedure, the court could go beyond the power expressly given by the statute we do not think it necessary to decide. It is sufficient answer to defendant's contention that the claim for rent presented in this action was not litigated in that proceeding so far as the petition and decree disclose what was done; and the question of defendant's liability for rent was not necessarily involved. The probate court seems not to have considered this claim as then litigated, for it is alleged in plaintiff's complaint, and not denied, that in its decree of distribution the court set over to plaintiffs the claims arising out of the matters set forth in the complaint. Nor was it necessary for the court to find the value of the use and occupation. Having found the implied contract to pay the rent stipulated in the lease, the value of the use of the premises became immaterial. No findings are required on immaterial issues.

3. Defendant made a motion to strike out certain parts of the complaint on the ground of the matter designated being irrelevant and redundant. There is also a demurrer to the complaint on general and special grounds. We have examined the alleged irrelevant and redundant matter, and, while we think some of it might, without harm to the complaint, have been dispensed with, we cannot see that defendant was injured by its retention. The demurrer is not urged further than by expressing the opinion of counsel that it should have been sustained. Indeed, the motion and demurrer depend principally for support upon the questions already considered, and need not be further noticed.

Our conclusion on the whole case is that the judgment and order should be affirmed, and we so advise.

Haynes, C., and Pringle, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Henshaw, J., Temple, J., McFarland, J.

Hearing in Bank denied.