[Civ. No. 4707.   Fourth Dist.   Jan. 11, 1954.]

BYRON PEEBLER et al., Respondents, v. J. F. SEAWELL, Appellant.

Joseph Seymour and J. David Hennigan for Appellant.

Roland Maxwell and Paul H. Marston for Respondents.

MUSSELL, J. — On August 30, 1945, plaintiffs, owners of real property in Indio, entered into a written lease of the premises to defendant J. F. Seawell and H. H. Snow. The lease was for five years at a monthly rental of $150, with an option to purchase as follows:

"12. Lessees are hereby granted an option to purchase said real property at the expiration of said term or any renewal thereof by giving to the lessors at least sixty days notice in writing of such election before the end of said term or renewal thereof. In the event the price cannot be mutually agreed upon, the same shall be fixed by board of arbitrators in the same manner as designated in the next preceeding paragraph. In the event of such purchase and the lessees desiring terms, lessees shall pay at least one-third of the purchase price down and the balance in monthly installments of at least $125.00 per month, plus six per cent interest on the deferred balance."

Paragraph 7 of the lease provides:

"7. That should the lessees occupy said premises after the expiration date of this lease, with the consent of the lessors, expressed or implied, such possession shall be construed to be a tenancy from month to month and said lessees shall pay said lessors for said premises the sum of $150.00 per month for such period as said lessees may remain in possession thereof."

Defendant Seawell succeeded to the interest of H. H. Snow and the rent on the property was paid by the lessee Seawell at the agreed rate during the entire term of the lease. On May 5, 1950, Seawell wrote to plaintiffs notifying them of his election to exercise his option to purchase and offered the sum of $15,000 for the property. On July 6, 1950, plaintiff Byron Peebler made a counteroffer to sell for the sum of $40,000. The parties could not agree upon the purchase price and it was fixed by arbitration, on February 7, 1951, at the sum of $22,500. On February 8, 1951, defendant prepared and forwarded to the Riverside Title Company proposed escrow instructions for the purchase of said property for the sum of $22,500, one-third, or $7,500, to be paid before close of escrow and the balance at the rate of $125 per month, to include principal and interest, and to be evidenced

by a trust deed and promissory note. Plaintiffs refused to sign these instructions and offered to consummate the sale through the pending escrow if defendant, in addition to the amount stated in his proposed instructions, would pay additional rental to and including the close of escrow. However, the parties were unable to agree as to the terms of sale and the instant action in unlawful detainer was filed by plaintiffs on April 23, 1951. Plaintiffs alleged that the defendant occupied the premises under a month to month tenancy at the agreed rental of $150 per month and had failed to pay said rental since August 30, 1950. Defendant answered, alleging that he was in possession of the property as vendee under the provisions of paragraph 12 of the lease and that he was not a month to month tenant.

The trial court found in favor of plaintiffs and rendered judgment against the defendant for the sum of $1,200 rent from September 1, 1950, to May 1, 1951, and also awarded plaintiffs damages in the sum of $5.00 per day since that period and attorney's fees in the sum of $200.

The principal question raised by defendant on his appeal from the judgment is whether the plaintiffs were entitled to rental of the premises involved after the termination of the lease, his contention being that the option to purchase was exercised and that thereafter he was not obligated to pay rent. We are not in accord with this contention. The record shows that defendant failed to tender or pay plaintiffs the sum required by paragraph 12 of the lease as a down payment in the event of the exercise of the option. On March 15, 1951, plaintiffs notified defendant that unless he forthwith proceeded to complete his purchase of the property and make all required payments on account of the purchase price, the sale would be canceled and plaintiffs would take possession of the property. Defendant failed to comply with this notice. The sale of the property has never been consummated.

Defendant argues that the option provided for in the lease was exercised by his letter and notice of May 5, 1950, and that thereafter a binding contract of purchase and sale between the parties came into existence. Citing *Murfee* v. *Porter*, 96 Cal.App.2d 9 [214 P.2d 543] ; *Gordon* v. *Dufresne*, 205 Cal. 512 [271 P. 1066] ; and *Group Property Inc.* v. *Bruce*, 113 Cal.App.2d 549 [248 P.2d 761]. In the Murfee-Porter case the court stated the general principles relating to the "exercise" of an option as follows:

" 'The "exercise" of an option is merely the election of the optionee to purchase the property.' (66 C.J. 497.) 'Except where required by statute to be in writing, an option may be exercised or accepted orally unless the contract requires a written acceptance . . .' (66 C.J. 499.) '. . . payment or tender is not essential unless it is a condition precedent.' (66 C.J. 500.) 'If no time is specified the acceptance must be within what is a reasonable time under the circumstances of the particular case. The principle that time is of the essence of an option generally applies only to acceptance and not to performance.' (66 C.J. 503; see, also, 55 Am.Jur. 512.) 'It is a general rule that an optionor who has given the right to purchase property within a specified time may not do any act or omit to perform any duty calculated to cause the optionee to delay in exercising the right.' (55 Am.Jur. 510.) (For a detailed discussion of these general principles see 3 Thompson on Real Property (Perm. ed.), §§ 1325, 1329, 1330, 1331; vol. 8, §§ 4569, 4573.) 'Once the option to purchase was exercised, the lease and option agreement no longer existed, and a binding contract or purchase and sale came into existence between the parties. (55 Am. Jur. 494; *Smith* v. *Post,* 167 Cal. 69 [138 P. 705] ; *W. G. Reese Co.* v. *House,* 162 Cal. 740 [124 P. 442].)' "

In *Cates* v. *McNeil,* 169 Cal. 697, 706 [147 P. 944] the court said :

"The option clause gave the respondents a right to purchase the leased premises for the price of six hundred dollars an acre. There is nothing in the option clause which requires payment of the price of the land to be made or tendered when the option right is exercised in order to constitute an acceptance. Payment may or may not be made an essential condition to the exercise of such a right just as the parties see fit to provide for in the option agreement."

In *Gordon* v. *Dufresne, supra,* the action was to enforce specific performance of an option clause in a lease. Plaintiff had tendered the first installment on the purchase price and the court held that the lease and option agreement were not severable but that the lease and option formed one document, the provisions of which were interdependent, and the covenant to pay rent or do other acts supported the option as well as the right to occupy the premises.

In the Group Property case, *supra,* the requirements for tender were met and we there said :

"As to the second contention that plaintiff failed to make

a timely tender of the purchase price, this fact is not borne out by the evidence. Defendant was notified orally that plaintiff was exercising its option and defendant was asked that he meet plaintiff's agent at the title company to open the escrow and arrange for the necessary deposit of funds and the deed. Apparently defendant did not act on the suggestion, and within a reasonable time a sufficient offer and tender was made, and under the interlocutory judgment defendant was again given the opportunity to accept the offer and tender as made, but again refused to do so. It is apparent from the facts related that a tender would have been refused under any conditions. No advantage can now be claimed by defendant on the ground that a tender was not properly and timely made immediately following the exercise of the right to purchase.''

In the instant case a condition to the exercise of the option was a down payment of one-third of the purchase price. This was not paid or tendered to plaintiffs and the cited cases do not support defendant's contention that the option was exercised by his notice of May 5, 1950.

In *Journe* v. *Hewes*, 124 Cal. 244 [56 P. 1032], the court held that under a lease containing an option to purchase, the relation of lessor and lessee, and the liability of the lessee for rent, continued until a tender or offer to pay the purchase money was made. And in *Knowles* v. *Murphy*, 107 Cal. 107, 115 [40 P. 111], it was held that if the tender was made by virtue of the option clause in the lease it did not release the defendants from their obligation to pay the rent, unless they should in some manner have sought the enforcement of the agreement to sell on the part of the lessor.

Paragraph 7 of the lease provides for the payment of rental in the sum of $150 per month in the event that the lessees should occupy the premises after the expiration of the lease and that possession shall be construed to be a tenancy from month to month. Since the parties failed to agree upon the terms of the sale, the provisions of said paragraph 7 of the lease control as to the relationship of the parties after the termination of the lease.

Appellant contends that the allowance of attorney's fees was improper. The lease provided:

''That should the lessors be compelled to commence or sustain an action at law to collect said rent or parts thereof or to dispossess the lessees or to recover possession of said premises, the prevailing party shall pay all costs in connec-

tion therewith, including a reasonable fee for the attorney of the *prevailing* party.'' (Emphasis ours.)

Respondent contends that a typographical error was made in writing the lease in using the word ''prevailing'' instead of ''losing'' in this paragraph of the lease. The trial court permitted an amendment to the complaint to allege that under the terms of the lease plaintiffs are entitled to recover from defendants a reasonable attorney's fee. However, no evidence was offered as to the reasonableness of the fee allowed and no effort was made by plaintiffs to reform the lease by appropriate pleading or proof. Under the circumstances disclosed by the record, the allowance of attorney's fees was improper.

Appellant argues that he was not served with findings of fact and conclusions of law and that the judgment should therefore be reversed. This contention is without merit. The record shows that proposed findings were served on defendant's counsel by mail on March 6, 1952. Thereafter defendant submitted proposed findings and a hearing was had thereon, following which the trial court made a minute order resubmitting the case. After the resubmission, on June 9, 1952, a minute order was again made ordering judgment for plaintiffs. Thereafter the court signed the proposed findings which had been served on defendant's attorney on March 6, 1952. ■ The provisions of section 634 of the Code of Civil Procedure with respect to the service of findings have been held to be merely directory, so that compliance therewith is not necessary to the validity of a judgment. (*First Nat. Bank* v. *Williams,* 54 Cal.App. 537 [202 P. 164]; *Estate of Rosland,* 76 Cal.App.2d 709, 711 [173 P.2d 830].) No prejudicial error appears with respect to the service of the findings.

The judgment is modified by striking therefrom the provisions awarding plaintiffs judgment for attorney's fees and is affirmed as so modified. Plaintiffs to recover costs.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied Feb. 1, 1954, and appellant's petition for a hearing by the Supreme Court was denied March 10, 1954.