[Civ. No. 18024. Second Dist., Div. Three. Aug. 21, 1951.]

WALTER D. LANCE, Appellant, v. FRED A. FORSBERG, Respondent.

Joseph K. Coady for Appellant.

Jesse A. Hamilton for Respondent.

WOOD (Parker), J.—Plaintiff appeals from a judgment in favor of defendant which was based upon an order sustaining without leave to amend, a demurrer to the amended complaint.

In the first cause of action of the amended complaint it was alleged that defendant was indebted to plaintiff in the sum of $4,000 for money had and received, and that no part of said sum had been repaid. In the second cause of action it was alleged, in substance, as follows: About November 1, 1944, defendant was engaged in the fumigating business; about that date said defendant, by oral agreement, employed plaintiff to work for him in said fumigating business for an indefinite period of time and, as compensation therefor, defendant agreed to pay plaintiff a sum equal to 25 per cent of the gross income of the business, payable $50 a week, and the remainder in a lump sum at the end of each year; plaintiff thereafter entered into such employment upon said terms

and conditions; during the year 1945 said business had a gross income of $26,660; during said year plaintiff drew from his 25 per cent share thereof the sum of $3,950, leaving a balance due plaintiff at the end of said year of $2,715; about December 31, 1945, plaintiff and defendant entered into an agreement whereby both parties agreed that the said sum of $2,715 should not be withdrawn by plaintiff but "left to accumulate for the purpose of buying an interest in said business"; during the year 1946 the "business" had a gross income of $18,777.49; during said year plaintiff drew from his 25 per cent share thereof the sum of $3,120, leaving a balance due plaintiff at the end of said year from defendant the sum of $1,574.37; said sum was not paid by plaintiff but by mutual agreement was allowed to remain in the business and accumulate to plaintiff's credit for the purpose of buying an interest in said business; from January 1, 1947, to June 3, 1947, the said business had a gross income, the exact amount of which was unknown to plaintiff; about June 3, 1947, plaintiff and defendant filed a certificate with the county clerk "for transacting business" under a fictitious name; said certificate "certifies" that plaintiff and defendant were conducting a fumigating business under the fictitious firm name of Commercial Fumigation and Extermination Company; about June 3, 1947, the sums which had been left to accumulate by plaintiff were transferred to the general funds of said company; said business was thereafter conducted and operated by both plaintiff and defendant; in December, 1948, plaintiff and defendant entered into an oral agreement whereby it was mutually agreed to dissolve their partnership business "and transfer all of the assets of the partnership to a corporation to be immediately formed"; it was further agreed "that all of said assets were to be exchanged for stock in said corporation in the amount of one thousand (1,000) shares, each share to have an agreed par value of Ten ($10.00) Dollars a share"; it was further mutually agreed that plaintiff's interest in the partnership assets was 40 per cent "of the total" and plaintiff was to receive 400 shares of said stock, and that defendant's interest in said partnership assets was 60 per cent "of the total" and defendant was to receive 600 shares of said stock; in accordance with said agreement, articles of incorporation were prepared and filed with the Secretary of the State of California; about January 1, 1949, an inventory of the assets of the partnership, which plaintiff and defendant agreed should be turned over to the corporation, was taken;

said assets "consisted of equipment, machinery and materials to the value of $10,319.66, accounts receivable in the sum of $1895.59, and cash on hand in the sum of $2,503.13, subject to liabilities of accounts payable" in an amount unknown to plaintiff at that time; among the items included in said inventory were certain assets (specifically set forth in paragraph X) of certain values (specifically set forth in said paragraph) of the total value of $3,398; thereafter a petition was filed by defendant with the Corporation Commissioner for a permit to issue 1,000 shares of stock "of the said corporation in exchange for the assets of the said partnership," and without the knowledge or permission of plaintiff the assets (above referred to) of the total value of $3,398 were not included by defendant in said petition; that the failure on the part of defendant to include said assets was deliberate and with the intent to defraud the plaintiff; a permit to issue 1,000 shares of stock to plaintiff, defendant and one Stene, or any of them, in consideration for the transfer to the corporation of the "assets described in its application" was issued by the Corporation Commissioner upon the condition that all authority to sell said stock "shall terminate and expire on the 29th day of December, 1949"; about January 1, 1950, plaintiff discovered that defendant had disposed of the greater portion of the assets set forth in paragraph X of the complaint, and had applied the proceeds thereof to his own use; defendant refused to account to plaintiff for such proceeds; thereafter plaintiff discovered for the first time that the petition to the Corporation Commissioner had not included all of the assets of the partnership and that the permit issued by said commissioner expired December 29, 1949; plaintiff demanded the return of the sum of $4,000 from defendant some time after January 1, 1950, and before January 30, 1950, and defendant refused to pay said sum; on January 30, 1950, defendant delivered to plaintiff a purported certificate for 400 shares of stock in said corporation "with par value of $10.00 a share, which certificate was dated January 30, 1950"; the permit to issue stock had not been renewed as of said date and the "permit" was null and void; about February 13, 1950, plaintiff rescinded his agreement to purchase 400 shares of stock in the corporation, tendered the aforesaid purported certificate of stock to the defendant, and demanded the return of $4,000; defendant has refused to pay the same or any part thereof.

Respondent (defendant) contends that if the amended complaint "indicates a cause of action, it is owned by the corporation, not the plaintiff here." He argues that the plaintiff's remedy was a stockholder's suit against defendant. The minute order of the court sustaining a demurrer recites as follows: "Demurrer is sustained without leave to amend, but without prejudice to an action by the corporation." That order indicates that the trial court was also of the opinion that the plaintiff did not have the right to maintain the action but that the corporation had that right. It was alleged in the amended complaint, as above shown, that the plaintiff and defendant were partners; that plaintiff's interest in the partnership was 40 per cent and the defendant's interest was 60 per cent; that the partners agreed to dissolve the partnership and to transfer all of its assets to a corporation to be formed, and that all the assets were to be exchanged for 1,000 shares of stock in the corporation, and that plaintiff was to receive 40 per cent or 400 shares and defendant was to received 60 per cent or 600 shares. It was alleged further that the petition filed by the defendant for a permit to issue the 1,000 shares in exchange for the assets of the partnership did not include various assets of the partnership of the value of $3,398; that said failure to include said assets was without the knowledge or consent of plaintiff and was with the intent to defraud plaintiff. It was also alleged that permission was granted by the Corporation Commissioner to issue 1,000 shares to plaintiff, defendant and one Stene, or any of them, in consideration of the transfer to the corporation "of the assets described in its application," and that such permission should terminate on December 29, 1949. Since the assets described in the application did not include the said assets of the value of $3,398, and since those said assets were not a part of the property to be received by the corporation under the provisions of the permit or any agreement between the corporation and the partners, it does not appear that the corporation was entitled to receive the said assets of the partnership which were not described in the application. The mere incorporation of an existing partnership does not *ipso facto* operate to transfer to the corporation the title to the property of the partnership, but there must be a conveyance as in other cases. (18 C.J.S. 543.) There was no conveyance of the said assets of the value of $3,398 and, as above stated, it does not appear that there was any agreement between the corporation and the partners requiring the conveyance of such

assets. The permit to issue certificates of stock expired prior to the date the certificate of stock was issued to plaintiff. A security "issued without a permit from the Commissioner of Corporations is void." (*Austin* v. *Hallmark Oil Co.*, 21 Cal.2d 718, 726 [134 P.2d 777].) It therefore appears that plaintiff did not receive anything from the corporation. Thereafter plaintiff rescinded his agreement to purchase 400 shares of stock and tendered his certificate of stock to the defendant.

In *Morris* v. *Whittier Amusement Co.*, 123 Cal.App. 121 [10 P.2d 1017], certain persons became associates for the purpose of purchasing a building and transferring it to a corporation to be formed. The building was purchased and transferred to the corporation which was formed. The action, which was commenced by some of the associates, was to recover secret profits made by one of the associates who, in behalf of the others, negotiated the purchase. A demurrer to the complaint was sustained without leave to amend. The question therein was whether plaintiffs or the corporation had the right to maintain the action. It was held in that case that plaintiffs had the right to maintain the action, and the court stated, at page 124, that the solution of the question as to who may maintain the action "depends upon the answer to the question, 'Who was injured by the fraud of Harris [the associate who negotiated the purchase]?'" It further stated that the "injury was not suffered by the corporation but by the associates, who paid their cash for the property, and who were defrauded by their own agent." It further stated therein, at page 123, "The rights and liabilities of the parties who thus associate themselves for the purpose of acquiring the property, and afterward forming the corporation, are governed by the same principles as those applying to joint adventures. . . . 'Promoters, like other joint adventurers, and like parties generally, occupy a relation of trust and confidence, so that they must act toward each other with the utmost good faith, and if one or more are guilty of any fraud or breach of trust against the others, by taking a secret profit, misappropriating funds, or otherwise, they will be compelled to account in equity as in other like cases.' [Citation.] The foregoing authorities clearly establish the rights and liabilities of these associates, *per se*. It would appear that the transaction here detailed was a matter entirely between themselves."

In the present case it appears that all the transactions, from the formation of the partnership to the formation of the corporation, were between plaintiff and defendant. They were the only members of the partnership and the only parties to the agreement to form a corporation and transfer the partnership assets to it. (It does not appear that Stene, who was mentioned in the permit, had any interest in the assets.) The corporation was not a party to the agreement, relative to the transfer of the assets, and it does not appear that it acquired any right to the assets which the defendant allegedly misappropriated. The amended complaint stated a cause of action.

The judgment is reversed, and the trial court is directed to overrule the demurrer.

Shinn, P. J., and Vallée, J., concurred.