[Civ. No. 30968.   Second Dist., Div. Three.   Jan. 31, 1968.]

ERWIN P. MARON, Plaintiff and Appellant, v. L. R. HOWARD et al., Defendants and Appellants.

474

Gustafson & Cohen, Stanley E. Cohen and Theodore J. England for Defendants and Appellants.

Dixon & Adams and James E. Dixon for Plaintiff and Appellant.

FRAMPTON, J. pro. tem.†—The defendant Howard was the owner of lots 1 through 16 of Industrial Underpass Tract of Ventura County. The combined area of these lots was approximately nine and one-half acres. For convenience these lots will be referred to as the Howard parcel. On or about January 21, 1960, the defendant Howard leased lots 12 and 13 of the above parcel to the plaintiff Erwin P. Maron. For convenience these lots will be referred to as the Maron parcel. The tenancy under this lease commenced on January 1, 1960, and was for a term of five years with an option to renew for an additional five years. In addition, the lease contained the following clause: "Further, if during the term hereof or any renewal thereof, Lessor desires to sell the demised premises, Lessee shall have the option, for a period of five (5) days, after written notification from Lessor, to meet the terms and conditions of any bona fide offer received by Lessor for such sale. If Lessee fails to accept the said terms and conditions of sale during the said five (5) day period, the option shall be of no further force and effect, and Lessor shall be free thereafter to sell such premises to third persons." Maron exercised his option to renew the lease for the additional term of five years.

Prior to the time that defendant Martin V. Smith acquired the Howard parcel he owned about 40 acres called the Wagon Wheel Junction area, which acreage was adjacent to the Howard parcel. This land had industrial, light manufacturing, trailer park, bowling alley, restaurants, and various types of

†Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

industries on it. At the time Smith acquired the Howard parcel, there were two other parcels of land in the area not then owned by Smith. These have since been acquired by him. Smith wanted to create a restaurant row on Wagon Wheel Road on which the Maron parcel fronts. Smith had frequently but unsuccessfully sought to purchase the Howard parcel from Howard.

About January 1961, Smith again began negotiating with Howard for the purchase of the Howard parcel. Terms were finally agreed upon and an escrow was opened on June 1, 1961. Both Howard and Smith, at the time of escrow, were aware of the first refusal provision in plaintiff's lease, and by letter dated June 13, 1961, the escrow instructions were amended as follows: "The Smiths are aware that certain of the leases covering the land include rights of the Lessees to purchase the property under certain circumstances after receiving notice of a proposed sale. The Smiths desire that such notices not be given to the Lessees and have agreed to take title subject to said leases including, but without limitation, any rights the tenants might have to purchase the property and further agree to indemnify Howards against any loss they might suffer by reason of their failure to give such notices."

The escrow closed on September 30, 1961, and on October 12, 1961, plaintiff was notified by letter advising him to pay rent to Smith since Smith was the new owner. Plaintiff was not advised of the terms and conditions of the sale and was not offered an opportunity to purchase the Maron parcel upon any terms or conditions. Smith took title to the Maron parcel subject to the right of first refusal, as provided in the lease, on the part of plaintiff.

The 16 lots in the Howard parcel were not uniformly developed. Some were improved and some were not; some were leased and some were not. About one-half of the parcel was devoted to the manufacture and storage of concrete blocks. It was stipulated at the trial "that the various parcels of land within the nine and a half acres known as the Howard parcel as shown on the diagram, which is marked Plaintiff's Exhibit 2, have varying values that some of the parcels are improved with buildings, some buildings of which are more valuable than other buildings which may be on other parcels in the same nine and a half acres, and some parcels have no buildings on them." In the sale of the Howard parcel the price paid was established on the basis of a sale and purchase of the

entire parcel, and there was no breakdown or allocation of values, or terms and conditions to be applied to individual lots or buildings, or parcels consisting of one or more lots and buildings situated thereon. The Maron parcel was 100 feet by 140 feet in dimension and contained 14,000 square feet which placed its size at about 1/27th of the size of the Howard parcel. The Howard parcel was sold to Smith for the sum of $461,000, with a down payment of $30,000, and monthly payments of $5,000 until October 10, 1967, at which time the balance became due and payable.

On May 8, 1962, plaintiff wrote a letter to Howard in which he advised Howard of his intention to exercise the right of first refusal. A carbon copy of this letter was sent to Smith. Smith responded that the property was not for sale at any price. On July 10, 1962, plaintiff filed suit in his name alone wherein he sought judgment to compel the defendants to sell the Maron parcel to plaintiff on the same terms and conditions that such parcel was sold to the defendants Smith, and at a price to be determined by ascertaining the value of the Maron parcel as a part of the Howard parcel, or in the alternative that the defendants be ordered to sell the Howard parcel to plaintiff on the same terms and conditions as applied to the sale of such parcel to the defendants Smith, or in the alternative for damages in the sum of $58,000. Plaintiff also sought, as a further alternative, a decree setting aside the sale and restoring the parties to their original positions prior to sale.

After the trial and on April 13, 1966, judgment was entered as follows: ". . . 2. Within 30 days from the date this Judgment becomes final, the parties are ordered to open an escrow at an escrow company agreed on by the parties; but if no agreement thereon is reached, then at Title Insurance & Trust Company, to carry out the terms of the balance of this Judgment. The escrow shall provide for the usual division of escrow charges and expenses between buyer (Maron) and seller (Smith); and shall provide that seller furnish buyer with a policy of title insurance in standard form insuring buyer's title in accordance with this Judgment in the sum of $50,000.00.

"3. Within 45 days from the date this Judgment becomes final:

"A. Defendants Martha K. Smith and Martin V. Smith are ordered to cause a deed to be prepared and executed conveying title to the Maron parcel to plaintiff Erwin P. Maron from the present record owner of the property; said deed to be

deposited with the escrow to be established hereunder, under instructions that it is to be delivered to Maron and recorded upon the payment by Maron of the sum of $50,000.00 within the time allowed by this Judgment.

"B. Defendant L. R. Howard is ordered to execute or cause to be executed a release of any security interest in his favor on the Maron parcel and to cause the same to be deposited in the same escrow mentioned in the preceeding [*sic*] paragraph under instructions that it is to be delivered and recorded if plaintiff pays the $50,000.00 purchase price for the property within the time provided in this Judgment.

"4. Defendants Martin V. Smith and Martha K. Smith are ordered to refrain from granting or conveying any interest of any kind in the Maron parcel to any other person, firm or corporation until such time as plaintiff either indicates his intention not to purchase the property or until his right to purchase the property under the terms of this Judgment has expired. Said defendants Martin V. Smith and Martha K. Smith are further ordered not to cause or allow any person or entity subject to their control to make any other conveyence [*sic*] of any interest in the Maron parcel during said period of time.

"5. Defendants Martin V. Smith and Martha K. Smith are ordered to remove all liens, encumbrances, easements or rights of any nature which would be clouds upon Maron's title, which have come into existence against the Maron parcel since the acquisition of title by defendants Smith; or, if the same cannot be removed because there is some dispute of their validity, to execute an agreement holding Maron harmless therefrom in all respects. If and to the extent that any such liens, encumbrances or similar clouds exist, an adequate amount is to be withheld from the purchase price to be paid by Maron and retained in escrow until such liens, encumbrances or clouds are removed; but if the same cannot be removed within a reasonable time, then the amount so withheld is to be returned to Maron and the purchase price of the property reduced accordingly.

"6. Plaintiff Erwin P. Maron shall have the right for a period of 60 days from the date this Judgment becomes final to purchase the Maron parcel for the sum of $50,000.00, said right to be exercised through the escrow to be established as heretofore mentioned in this Judgment; said money to be deposited in said escrow on or before the 60th day mentioned herein under escrow instructions requiring that it be paid

over to defendants Martin V. Smith and Martha K. Smith upon the recording of a deed vesting title in Erwin P. Maron or his nominee free and clear of any encumbrances, except encumbrances placed thereon by Maron, and free and clear of any easements, covenants, conditions, or rights of any nature which had not attached to or been imposed upon the property prior to the acquisition of title by defendants Smith. This includes all such matters which defendants Smith, by their own actions, can release, reconvey or otherwise dispose of, and all matters which, because of the existence of a lis pendens filed in connection with this action can similarly be set aside or disposed of or cleared from the property, but does not include interests in the nature of normal utility easements which may have been granted by defendants Smith during the period of time from the time they acquired title to the property to the time when the lis pendens in this action was filed.

"7. If, upon the completion of the 60 day period defined elsewhere in this Judgment, plaintiff has not tendered the $50,000.00 for the purchase of the property, then all of plaintiff's rights to purchase the property are terminated.''

The defendants L. R. Howard, Martin V. Smith and Martha K. Smith appeal from the entire judgment. Plaintiff appeals from that portion of the judgment "which failed to give plaintiff credit for rentals paid and interest thereon (less legitimate offsets thereto) in determining the amount plaintiff is to pay defendants Martin V. Smith and Martha K. Smith; and the failure of the judgment in other respects to put the parties in the same position they would have been in (as nearly as practicable) had plaintiff been allowed to purchase the property in September 30, 1961, on the same terms and conditions, as nearly as practicable, governing the sale from Howard to Smith; . . .''

The defendants' principal contentions on appeal are that (1) the plaintiff did not have a legal right to bring the action, and (2) the provision of the lease relating to the lessee's right of first refusal, as interpreted by the trial court, was not sufficiently definite and certain to permit specific performance.

The plaintiff's principal contentions on appeal are that (1) the court erred in not allowing plaintiff credit, against the purchase price, for rentals paid by plaintiff since September 30, 1961, when, as plaintiff claims, he should have been allowed to purchase the property, and (2) the court erred in not giving plaintiff the benefit of the terms and conditions of the sale from Howard to the Smiths.

The record bearing upon the plaintiff's right to sue discloses in substance the following: Plaintiff testified that he did business under the name and style of M & M Business Service and was so engaged when he entered into the lease with Howard. The lease dated January 21, 1960, is between "L. R. HOWARD, party of the first part," and "ERWIN P. MARON, doing business as 'M & M BUSINESS SERVICE,' party of the second part." Sometime prior to February or March 1961, Maron formed a corporation under the name of Maron Litho, Inc. Maron testified that on or about February or March 1961 he ceased doing business as a sole proprietorship and transferred the assets of the sole proprietorship, including the lease, to the corporation; this took place prior to the time that Smith acquired the property from Howard; since the date of incorporation of Maron Litho, Inc. the rental provided for in the lease has been paid by a corporation check; he obtained a verbal consent from Howard to transfer the lease. The lease provided for a written consent on the part of Howard for its transfer by Maron. Maron testified further that, after he received notice of the transfer of the property from Howard to Smith, he paid the rent to Smith by checks of Maron Litho, Inc.; that an attorney formed a corporation and filed the papers in Ventura County for the corporation, and that was the extent of any formal documents; he never executed any formal assignment of his interests to Maron Litho, Inc.; he then changed the name on his letterheads and invoices, using the name Maron Litho, Inc., and operated under this name; in contracts executed by the corporation he first signed as president of the corporation, then signed a guarantee of such contracts as an individual; no stock has been issued and he is the sole owner of the corporation; the corporation was formed but that is about all that has happened.

Maron testified concerning his knowledge of negotiations between Howard and Smith that "Yes, I did know that negotiations were pending and, no, I did not intercede for the reason that I recognized that I couldn't possibly help myself to make a better deal, by interjecting myself, than Bud Smith; he was the best deal maker in the County. He would get the best possible terms, he would get the lowest down payment, he would make the best possible conditions of sale, and those were the conditions I would be bound by, and I certainly didn't think I could do better than he could. And,

further, according to my lease, which I carefully read at the time, I wasn't supposed to announce or interject myself."

In speaking of the occasion on October 12, 1961, when Mr. Gale, the agent of Smith, delivered three letters to him relating to the leased property, and in speaking of his right of first refusal, Maron testified that at that time "I knew I had the right in my lease." On April 24, 1961, Maron wrote to Smith suggesting that he would be interested in entering into a master lease with Smith on a new building which Smith was then contemplating constructing. This letter is written on stationery bearing the name "Maron Litho, Inc.," and states in part "We are incorporated now and becoming attractive to investors. Earnings are good. We may be able to assist the financing by signing a 20 year master lease. I would install stationery, office supplies, office machines and equipment, office furniture, etc. as well as the existing printing plant. Could help rent." This letter is signed "Bud Maron" as an individual. Under date of October 1, 1961, Howard wrote the following letter to Maron: "As you know, the property which you are now leasing from me at the Wagon Wheel Junction, as Erwin P. Maron dba M & M Business Service, under date of January 21, 1960, has been sold to Mr. Martin V. Smith. Of course, your lease remains in full force and effect and has been assigned by me to Mr. Smith.

"In order to insure that there is no misunderstanding or confusion regarding the terms of your lease and the transition of the ownership of the property, I would appreciate it if you would review the information set forth below and if this information is accurate, please sign the carbon copy of this letter and return it to Mr. Martin V. Smith at 711 North Oxnard Boulevard, Oxnard, California. In the event there is any question concerning any of the information set forth below, please indicate the question and your understanding of the situation and forward this information to Mr. Smith. In this way we will be able to determine if any errors or misunderstandings have occurred and can take steps to clarify such matters.

"My understanding is as follows: 1. Your lease terminates on December 31, 1964. 2. Your present monthly rental is $331.00. 3. Your next rental payment is due on October 1, 1961. 4. Under your lease you have not made a security deposit. 5. You presently pay $4.00 each month for water supplied to the premises leased by you.

"Thank you very much for your assistance in this matter."

Under date of October 1, 1961, Smith wrote the following letter to Maron: "You are hereby notified that on September 30, 1961, your lease on the Wagon Wheel Junction property has been assigned by Mr. L. R. Howard to Martin V. Smith and Martha K. Smith. All payments and communications should hereafter be made and directed to Martin V. Smith, at 711 North Oxnard Boulevard, Oxnard, California.

"If you have any problem concerning your lease or the premises leased to you, please write, on the enclosed carbon copy of this letter the problem and the facts concerning it. I will then be in a position to discuss this matter with you in the hope that all problems may be settled immediately.

"Thank you very much for your cooperation."

Receipt of the two foregoing letters was acknowledged by the signature of "Bud Maron" as an individual contained upon a copy of the letter of transmittal which was returned to Smith.

On March 26, 1962, Maron wrote to Smith asking that Smith bear the cost of installing a new heater on the leased premises. This letter is written on stationery bearing the name "Maron Litho, Inc.," and is signed "Bud" as an individual. Robert M. Gale, Smith's agent, responded to this letter on March 27, 1962. Gale's response was addressed to "Maron Litho, Inc. . . . Attention Mr. Bud Maron." Gale's original letter was returned with a response by Maron signed by typewriter "Bud."

On May 8, 1962, Maron wrote to Howard as follows: "I would appreciate an opportunity to meet with you and discuss your plans in connection with my right of first refusal on the lease you assigned to Martin Smith.

"It was always my hope to acquire the property someday and I have naturally been disappointed.

"In view of your past kindnesses and cooperation I am reluctant to take any direct action which might injure you in any way. For that reason I have hesitated to call the matter to your attention, somehow expecting that you would approach me! [*sic.*]

"The necessity of retaining friendly relations with my new landlord prompts me to deal with you rather than Bud Smith.

"Please let me know when it would be convenient for you to see me."

This letter is written on stationery bearing the name Maron Litho, Inc., and is signed "Bud" as an individual. On May 15, 1962, Maron wrote to Howard as follows: "Dear Bud: I

am interested in purchasing the property I occupy at 518 Wagon Wheel Road. Please advise me of your selling price for lots 12 & 13 of Underpass Industrial Tract, and the building and improvements thereon.'' This letter is written on stationery bearing the name Maron Litho, Inc., and is signed ''Bud Maron'' as an individual.

Smith testified that since he had acquired the property he had received the rent from Maron.

The plaintiff's right to maintain the action was first questioned in the trial court by the defendants by motion for judgment of nonsuit. (See *Parker* v. *Bowron,* 40 Cal.2d 344, 351 [254 P.2d 6].) Such motion was denied. The trial court found that the plaintiff was rightfully in possession of the leased premises under the terms of the lease at all times mentioned in the action. The court found further that ''After January 21, 1960, and prior to the sale from Howard to Smith, plaintiff formed a corporation with the intention of turning over to the corporation the various assets which he owned in person in connection with his lithographing business. Consent to having the corporation occupy the leased premises was given by defendant Howard, who then was the owner of the property. Plaintiff did not complete the transfer of his assets to the corporation in that he did not assign the lease to the corporation and as between the parties to this suit, plaintiff is the lessee and is entitled to bring this action.''

An assignment by operation of law may arise from the landlord's acceptance of a new tenant with the consent of the original tenant, though there is no express assignment by the latter. (30 Cal.Jur.2d 365, Landlord and Tenant, § 217.)

The transfer of the whole of a lessee's interest in a lease is an assignment thereof. (*Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232, 242 [73 P.2d 1163]; *Reed* v. *South Shore Foods, Inc.,* 229 Cal.App.2d 705, 710 [40 Cal.Rptr. 575].)

An agreement contained in a lease which gives the lessee the right to purchase the demised premises is a covenant which runs with the land. (*Chapman* v. *Great Western Gypsum Co.,* 216 Cal. 420, 424 [14 P.2d 758, 85 A.L.R. 917]; *Andrade* v. *Casteel,* 81 Cal.App.2d 729, 731 [185 P.2d 51].)

In the absence of express restrictions, an assignment of the lease also includes an assignment of the right to purchase. (*Bewick* v. *Mecham,* 26 Cal.2d 92, 96 [156 P.2d 757, 157 A.L.R. 1277].) Ordinarily, the covenantee of a covenant running with the land is not entitled to enforce the

covenant following the transfer of the benefited property. (*Kent* v. *Koch*, 166 Cal.App.2d 579, 584 [333 P.2d 411]; *Blodgett* v. *Trumbull*, 83 Cal.App. 566, 571 [257 P. 199]; Restatement, Property, §§ 549, 550.) ■ If it can be said that there was substantial evidence before the trial court showing, as a matter of law that plaintiff transferred the lease to Maron Litho, Inc. in February or March 1961, he then divested himself of any power to exercise the right of first refusal, and he was not the real party in interest in the action. Under such circumstances he would have no standing to bring the action in his name. (Code Civ. Proc., § 367; *Ellison* v. *Henion*, 183 Cal. 171, 174 [190 P. 793, 11 A.L.R. 444].)

The evidence discloses that after the date of the claimed assignment the plaintiff and the defendants continued to refer to the lease, in their correspondence, as the property of Maron and not the property of Maron Litho, Inc. In the testimony the lease was referred to as the property of Maron. Smith, the purchaser of the property, testified that Maron paid the rent to him after he had acquired title to the leased premises from Howard. ■ The mere incorporation of an existing partnership or other voluntary association, whether by special act or under general law, does not *ipso facto* operate to transfer to the corporation the title to the real or personal property of the partnership or association in the absence of a statutory provision to such effect, but there must be a conveyance, contract of sale, or assignment, as in other leases. The corporation may, however, acquire an equitable title without a conveyance. (*Lance* v. *Forsberg*, 106 Cal.App.2d 226, 230 [234 P.2d 662]; 18 C.J.S. 543, Corporations, § 143, subd. B.) ■ The lease was for a period of five years commencing January 1, 1960, and at the time of the incorporation of Maron Litho, Inc. the lease had a period of approximately three years and ten months until its expiration if the option for renewal was not exercised. Such a lease must be in writing (Civ. Code, § 1624, subd. 4) and the assignment of such a lease must be by an instrument in writing, subscribed by the party disposing of the same, unless such assignment be by operation of law. (Civ. Code, § 1091; *Ser-Bye Corp.* v. *C.P. & G. Markets, Inc.*, 78 Cal.App.2d 915, 921 [179 P.2d 342]; 37 C.J.S. 606, Frauds, Statute of, § 114.) The lease in the case at bench contained a provision that: ''This lease shall not be transferred in bankruptcy or by operations [*sic*] of law. . . .'' ■ The trial court could reasonably have inferred under this conflict in the evidence that Maron had not transferred title to the lease to

Maron Litho, Inc., and that neither Howard nor Smith treated the corporation as the new tenant under the lease, but that the corporation was occupying the premises under some arrangement of sublease with Maron and was paying the rental stipulated in the lease directly to the original lessor or his assignee under the terms of such sublease. In view of the conflict in the evidence the trial court was not bound to find as a matter of law that Maron had transferred the lease to Maron Litho, Inc., and had thereby divested himself of the right to exercise the option of first refusal under the lease and to bring and maintain the action in his name. There was substantial evidence in the record to support the court's finding that Maron was the real party in interest.

The defendants next contend that the provision of the lease relating to the lessee's right of first refusal, as interpreted by the trial court, was not sufficiently definite and certain to permit specific performance. This contention is based in substance on the proposition that the agreement related to a smaller parcel contained within the larger parcel; the larger parcel was sold as a whole without relating value, terms and conditions to the smaller parcel; that under these circumstances the sale and purchase of the property as a whole relegated the contract to an agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable, and therefore such an agreement is not specifically enforceable. (Civ. Code, § 3390.)

The agreement of first refusal as contained in the lease was sufficiently certain to make the precise act to be done clearly ascertainable. (See *Richfield Oil Corp.* v. *Security-First Nat. Bank,* 159 Cal.App.2d 184 [323 P.2d 834].) Both Howard and Smith were aware of the plaintiff's right as evidenced by their conduct in executing and depositing in the escrow the hold harmless agreement from Smith to Howard. If Howard had desired to protect himself in the event that he wanted to sell the entire parcel including the Maron parcel for a lump sum figure without allocating any value or terms to the Maron parcel he could have done so by a stipulation in the lease provision making it inapplicable under such circumstances. This he did not do. Recognizing plaintiff's rights under the agreement, Howard and Smith could have allocated a portion of the total purchase price to the Maron parcel and thus have given the plaintiff a clear opportunity to have exercised his right. This they did not do. Instead, Howard and Smith, with

full knowledge of plaintiff's rights, set about to effect a sale and purchase of the property in such manner as to destroy the right of the plaintiff to make his offer to purchase on the same terms and conditions as were contained in the offer from Smith to Howard.

In the case in which the sale of an entire tract of land was made, and a smaller portion was under a lease which gave the lessees a preference to purchase the smaller portion in the event of a sale of the property, the court affirmed the judgment of the trial court ordering specific performance of the preferential right to purchase upon the payment by the lessees of the sum of $3,100, found to be the reasonable value of the premises occupied under the lease. (*Wilson* v. *Brown,* 5 Cal.2d 425 [55 P.2d 485].) Where the lease contained an option giving the lessee the right to purchase the land upon the expiration of the lease, at a price and upon terms to be agreed upon between the parties, and if not agreed upon then to be fixed by arbitration, each of the parties to select one arbitrator and the arbitrators so selected to appoint a third arbitrator, and where after the exercise of the option the lessor refused to sell and refused to appoint an arbitrator, the trial court fixed the price at $9,000 and ordered the lessor to specifically perform the contract. In this situation the court said: "By making the appraisal impossible, defendant prevented the determination of the purchase price by the method contemplated by the contract. Defendant's obvious purpose was to make the contract inoperative and to prevent plaintiff from seeking specific performance after the price was determined by the appraisers. A party who prevents fulfillment of a condition of his own obligation commits a breach of contract [citations] and cannot rely on such condition to defeat his liability. [Citations.]

"Moreover, section 1613 of the Civil Code prescribes that 'Where a contract provides an exclusive method by which its consideration is to be ascertained, which method appears possible on its face, but in fact is, or becomes, impossible of execution, such provision only is void; . . .' Under this section impossibility of ascertaining the price by the contractual method does not preclude a court from giving effect to the contract, ascertaining the consideration in place of the arbitrators or appraisers. Determination of the value of the property is a common task of courts in condemnation, partition, and other proceedings. If equitable considerations support the position of one who seeks specific performance, particularly if

he has previously changed his position in reliance on the contractual right that he seeks to enforce, courts of equity will assume the task of ascertaining the consideration if it has become impossible of ascertainment by the method provided in the contract. Thus it was said in *Kaufmann* v. *Liggett*, 209 Pa. 87, 102 [58 A. 129, 134, 103 Am.St.Rep. 988, 67 L.R.A. 353]: 'the authorities well agree that equity will not compel an arbitration, and this upon the very good ground that the courts remain open to the parties, with better provisions for securing justice than are possessed by arbitrators, but that in case of renewal leases the weight of authority clearly favors the view that the tenant in such a case has a quasi proprietorship—a right, merely lacking a valuation—and that the grossest inequity would be worked, should he lose his right through a failure upon the part of the arbitrators to fix a valuation. While, therefore, a court of equity will not undertake to compel an arbitration, which it cannot control, it will in such case make an appraisement itself, or direct it to be done by its own officer, and will thereafter enforce specific performance of the contract upon the terms so found.' . . ." (*Bewick* v. *Mecham, supra,* 26 Cal.2d 92, 99-100.)

In the case at bench, Howard and Smith, by their conduct, prevented the determination of the purchase price and the terms of the purchase by the method contemplated by the lease provision. It is not unreasonable to assume that the sale and purchase was made at a price which represented the fair market value of the property. Under these circumstances it was not unfair or inequitable as to the defendants for the trial court to have ascertained the value of the Maron parcel and fixed it at its fair market value and then ordered specific performance of the contract based upon such value. Specific performance is not an absolute right, but rests within the sound discretion of the court, and is to be granted only in accordance with established principles of equity and always with reference to the facts of the particular case. (*Pasqualetti* v. *Galbraith*, 200 Cal.App.2d 378, 382 [19 Cal.Rptr. 323].) Under somewhat similar circumstances the equitable right of specific performance has been recognized and granted by the courts of Michigan and Florida. (See *Brenner* v. *Duncan*, 318 Mich. 1 [27 N.W.2d 320] and *Denco, Inc.* v. *Belk* (Fla. Sup.Ct. 1957) 97 So.2d 261.) It has been denied by the courts of New Jersey, New York, Pennsylvania and South Carolina. (See *Guaclides* v. *Kruse*, 67 N.J. Super. 348 [170 A.2d 488]; *Sautkulis* v. *Conklin*, 1 App.Div.

2d 962 [150 N.Y.S.2d 356]; *New Atlantic Garden, Inc.* v. *Atlantic Gardens Realty Corp.*, 201 App.Div. 404 [194 N.Y.S. 34]; *L. E. Wallach, Inc.* v. *Toll*, 381 Pa. 423 [113 A.2d 258]; *Atlantic Refining Co.* v. *Wyoming Nat. Bank*, 356 Pa. 226 [51 A.2d 719, 170 A.L.R. 1060]; *Smith* v. *Traxler* (1955) 228 S.C. 418 [90 S.E.2d 482].)

Plaintiff urges that the court erred in not allowing him credit against the purchase price for rentals paid by him since September 30, 1961, when he should have been allowed to purchase the property. The lease contains no provision authorizing the application of rentals paid thereunder to the purchase price of the property in the event the lessee should exercise his preferential right to purchase. ▇ Unless the lease provides otherwise, a tenant is not relieved of the obligation to pay rent by notification of his intention to exercise his right to purchase. He remains a tenant and not a vendee in possession until the purchase price is paid or tendered and a binding contract of sale comes into existence. (*Peebler* v. *Seawell*, 122 Cal.App.2d 503, 505 [265 P.2d 109], et seq.)

▇ Under the unusual circumstances of this case, plaintiff was unable to pay or tender the purchase price of the property. He has occupied the property, however, and has paid the rent stipulated in the lease. The trial court could reasonably assume that the use and occupancy of the property had a value to the plaintiff at least equal to the amount of rent paid. Such a conclusion would appear to be fair and equitable. The plaintiff's status as a tenant under the lease will continue, according to the terms of the judgment, until he pays or tenders the amount provided in the judgment. He may elect not to accept these terms. It was not an abuse of discretion or of the power of the court sitting in equity, as a condition to granting the equitable relief sought, to refuse to apply the rentals paid to the purchase price of the property.

▇ It is urged further that the court erred in not giving plaintiff the benefit of the terms and conditions of the sale from Howard to the Smiths. Plaintiff, in this connection asserts that it would have been a very simple matter for the trial court to have allocated the terms of the sale from Howard to the Smiths to his obligation under the agreement by adopting the figure of 11 percent, based upon the ratio of $50,000 to the total purchase price of $461,000, and then allocating a sum equal to 11 percent of the down payment and of the monthly payments, to plaintiff's obligation under the agreement. As heretofore pointed out, the manner in which

the defendants consummated the sale of the Howard parcel as a whole rendered it impossible to allocate either the price or the terms of sale to any particular parcel and, under the unusual circumstances of this case, we believe it was within the power of the court, as a condition to granting the equitable relief sought by the plaintiff, to order the payment of cash for the purchase of the Maron parcel.

The judgment is affirmed.

Ford, P. J., and Moss, J., concurred.

The petition of the defendants and appellants for a hearing by the Supreme Court was denied March 28, 1968.