61 F.3d 911
 76 A.F.T.R.2d 95-5751, 95-2 USTC P 50,438
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jack T. JAMAR; Estate of Norma Jamar, Deceased, Jack T.
Jamar, Executor, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 92-70273.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 1, 1993.
Decided July 20, 1995.
 
 1
 Appeal from the United States Tax Court.
 
 Tax Court
 
 2
 Reversed.
 
 
 3
 Before: BRUNETTI, KOZINSKI, and BOGGS,* Circuit Judges.
 
 
 4
 MEMORANDUM**
 
 
 5
 Jack T. Jamar and the estate of his late wife appeal from the Tax Court's determination that they owed an additional income tax of $15,294 for the 1983 taxable year. This deficiency is caused by the determination of the IRS and the Tax Court that certain losses incurred in 1983 should have been allocated as the loss of taxpayers' corporate business, JNJ Oilfield Services, Inc., not a loss to the individual taxpayers. After reviewing the record, we hold that taxpayers adequately established their individual right to the operating loss, and that the IRS did not properly invoke its power under IRS Sec. 482, 26 U.S.C. Sec. 7482, to reallocate business deductions from the taxpayers to their business.
 
 
 6
 * Jack and Norma Jamar had for many years operated J & J Sales and Service, Inc., a corporation that operated an oil field waste disposal site. In early 1982, they disposed of this site, and Mr. Jamar decided to enter the waste hauling business. Beginning in December 1982, Mr. Jamar incurred expenses personally for equipment necessary to operate the waste hauling business and applied, in his individual capacity, for a permit to haul hazardous substances. Over the next several months, various of the ordered equipment was delivered and other equipment was purchased. The applied-for permit was granted on February 11, 1983.
 
 
 7
 During this same time, Jamar requested his attorney to reserve a corporate name for the business, and on February 14, 1983, the lawyer filed articles of incorporation for "JNJ Oilfield Services, Inc." as a California corporation. However, the Jamars' attorney, Thomas Olson, as sole incorporator, did not appoint the initial directors (Mr. and Mrs. Jamar) until May 31, 1983. On that same date, the directors met, elected the officers of the corporation, and accepted an offer from Mr. Jamar personally to exchange the assets he had acquired for 1,000 shares of the corporation's stock. The actual legal transfer of the assets of the sole proprietorship to the corporation did not occur until July 1, 1983. The corporation also received a waste-hauling permit in its own name in May 1983.
 
 
 8
 The business, however denominated, lost money throughout 1983. The Jamars deducted $177,761 as a loss from January 1 to June 30, 1983. The corporation reported a loss of $67,021 for July 1 through December, 1983. Six years later, in 1989, the IRS issued a deficiency notice concerning the loss for the first half of 1983 that the Jamars took on their individual return. The deficiency notice stated in general terms that the taxpayers had not "substantiated that [they] paid or incurred" the amounts or alternatively, that they had "not shown that these expenses are an allowable deduction."
 
 
 9
 After considerable negotiation, the IRS was ultimately satisfied that the expenses had actually been incurred and were legitimate business deductions. However, the IRS then contended that the expenses and losses should have been allocated to the corporation rather than to the Jamars personally. It was not until 22 days before the trial in the Tax Court that the IRS first formally indicated that it wished to reallocate expenses under Sec. 482. The Tax Court's decision, however, did not rest either on Sec. 482 or on the details of the deductibility of the expenses. Rather, the court held that the filing of the articles of incorporation on February 14, 1983 meant that any losses created by business operations subsequent to that date were necessarily incurred by the corporation, not the taxpayers.
 
 II
 
 10
 On appeal, the taxpayers contend that the Tax Court's determination that the expenses in question were undertaken by the corporation is clearly erroneous. The IRS contends, as an alternate grounds for affirmance, that it should be able to reallocate the taxes under Sec. 482, despite its lateness in giving notice of its intention to do so and the fact that the Tax Court did not rule on this issue. The parties appear to contest two issues with regard to the expenses and operation of the waste hauling business. The first is a question of California law: were the individual assets transferred as a matter of law to the corporation when the corporation was officially incorporated on February 14, 1983? The second is whether, if not, the assets could have been or were legally transferred prior to the first meeting of the board of directors on July 1, 1983.
 
 
 11
 The Tax Court found that the first question should be answered in the affirmative. As a matter of California law, we hold to the contrary. Numerous California cases hold that a newly created corporation does not acquire assets simply by incorporation; an actual conveyance from another source is required. Maron v. Howard, 258 Cal. App. 2d 473, 485, 66 Cal. Rptr. 70, 77 (Ct. App. 1968); Lance v. Forsberg, 106 Cal. App. 2d 226, 230, 234 Pac. 2d 662 (Ct. App. 1951). While the government properly notes that property can be conveyed or acquired without legal formalities, there must be evidence sufficient to indicate that such a conveyance or acquisition has actually been made. Simply the beginning of corporate existence, the sole basis relied on by the Tax Court, is insufficient.
 
 
 12
 On the other hand, it does not appear to be settled as to whether the corporation, admittedly in existence, could obtain assets prior to the first meeting of its directors. Assuming, without deciding, that it could, we then turn to the Tax Court's factual determination. The Tax Court found as a matter of fact that the assets were transferred as of the date of incorporation.
 
 
 13
 That holding, to the extent that it actually is a finding of fact, as opposed to a disguised conclusion of law resting upon the beginning of corporate status, is clearly erroneous. There is no indication that the assets themselves were ever transferred, formally or informally, until the resolution was adopted on July 1, 1983. There were no indicia of practical transfer of assets, such as repainting, holding out in the corporate name, or any other action that would either mislead anyone into believing the assets were in the hands of the corporation, or would obtain for Jamar any advantage from operating in the corporate name or form. There is no indication, for example, that had any mishap befallen others because of the use of those assets, the corporation's limited liability would have shielded the taxpayers personally. Under these circumstances, it was clearly erroneous to find that, as a matter of fact, the transfer had taken place. We are thus left with the result that the assets and operations did not transfer to the new corporation as a matter of law at the instant of incorporation, and that the assets were not transferred, as a matter of fact, prior to July 1, 1983. Thus, the Tax Court erred in upholding the notice of deficiency, and the taxpayers properly took the operational losses on their individual income taxes.
 
 III
 
 14
 The IRS also urges that it had the power under Sec. 482 to reallocate the losses. However, its power under that section depends on complying with a number of procedural requirements, which the Service failed to do. Tax Court Rule 142(a) holds that matters not mentioned in the notice of deficiency cannot be invoked by the Commissioner or, alternatively, the burden of proof shifts to the IRS to prove the validity of the reallocation. Here, despite the government's attempt to state that it relied on "the entire tax code" in its original notice of deficiency, there is no indication that Sec. 482 was raised specifically until less than three weeks before the trial.
 
 
 15
 Under these circumstances, the issue, if it can be raised at all, proceeds with the burden of proof on the Commissioner. Although the Tax Court did not rule on the matter, the government's evidence as presented at trial is sufficient to decide the issue and sufficient to show that the attempt at reallocation will not succeed. The Commissioner carries the burden under Sec. 482 to show that a loss should be reallocated. The reasons for the reallocation argued in the IRS brief are essentially the same as those dealt with in Section II, above: that the corporation had actually begun operating the business as early as February 1983. If the assets were not in fact acquired at the earlier time, then there is no way in which the taxpayer has attempted to manipulate the varying tax consequences of the individual and corporate forms. The Commissioner has made no showing, for example, that taxpayers attempted to allocate expenses and losses to the personal return, while funneling profits to the corporate return. Both the period of individual operation and the period of corporate operation resulted in losses. Nor has the Commissioner advanced any other reason to show that a reallocation of expenses to the corporation would better reflect the realities of the taxpayer's situation. The Commissioner has therefore failed to carry his burden.
 
 IV
 
 16
 Therefore, the decision of the Tax Court is reversed, and judgment shall be entered for the taxpayers.
 
 
 
 *
 The Honorable Danny J. Boggs, United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3