## 17090

J. LEONARD SMITH, Respondent, v. L. G. TRAXLER, Appellant
(90 S. E. (2d) 482)

Messrs. Butler & Chapman, of Spartanburg, *for Appellant,*

*Claude R. Dunbar, Esq.,* of Spartanburg, *for Respondent,*

*Messrs. Butler & Chapman,* of Spartanburg, *for Appellant, in reply,*

November 22, 1955.

OXNER, Justice.

This action has previously been before us on the question of whether defendant should be permitted to amend his answer by adding the defense of the Statute of Frauds, Code 1952, § 11-101 *et seq. Smith v. Traxler,* 224 S. C. 290, 78 S. E. (2d) 630. We allowed the amendment and thereafter the case came on for trial at the 1954 term of the Court of Common Pleas for Spartanburg County. At the conclusion of plaintiff's testimony, the Court granted a motion by defendant for a nonsuit. Plaintiff noted a motion for a new trial which was duly heard and taken under advisement. The Presiding Judge later concluded that the case should have been submitted to the jury and that he was in error in granting a nonsuit. Accordingly, in January, 1955, an order was filed setting aside the order of nonsuit and granting plaintiff's motion for a new trial. From this order, defendant has appealed.

We are confronted at the outset with plaintiff's contention that the order sought to be reviewed is not now appealable. But we do not think the appeal is premature. The Court granted a nonsuit upon the legal ground that the evidence was insufficient to warrant submission of the case to a jury. It was not granted because of some failure of proof which might be supplied upon another trial but upon the ground that the evidence introduced affirmatively showed plaintiff was not entitled to recover. Plaintiff could have appealed from the order granting this nonsuit. If he had, the issue before this Court on such an appeal would have been whether there was sufficient evidence to warrant submission of the case to the jury, which is precisely the question now

before us. Instead of appealing directly to this Court, plaintiff sought to remedy the alleged error by a motion for a new trial. The trial Judge granted this motion because he conceived that error of law had been committed in granting a nonsuit.

"It is well settled in this State that an order granting or refusing a new trial when based solely on an error of law is subject to review by this Court, but when the order is based upon questions of fact, or upon both questions of law and fact, it is not appealable." *Sellars v. Collins,* 212 S. C. 26, 46 S. E. (2d) 176, 177. In the later case of *Carolina Aviation, Inc. v. Glens Falls Ins. Co.,* 214 S. C. 222, 51 S. E. (2d) 757, the trial Judge at the conclusion of the evidence, directed a verdict for the defendant. Upon motion of plaintiff, he reversed his former holding and granted a new trial. We held that an order granting a new trial on the ground that a verdict was improperly directed for the defendant was appealable.

It follows from the foregoing authorities that the order granting a new trial in the instant case having been based solely on legal grounds, is appealable. In reaching this conclusion we have not overlooked the case of *Agnew v. Adams,* 24 S. C. 86, upon which plaintiff principally relies. But we think that case presented a different factual situation and does not govern the question before us.

We now turn to the questions presented on the merits of the controversy. They can better be understood after a review of the testimony, which discloses the following facts:

On March 23, 1948, defendant leased to plaintiff for a period of three years commencing June 1, 1948, a lot of land in the City of Spartanburg, fronting 50 feet on Kennedy Street and having a uniform depth of 140 feet, with an option to the lessee to renew said lease for an additional period of two years. Among other covenants and provisions, the lease contained the following first-refusal-to-purchase option:

"It is further mutually understood and agreed that if Lessor receives an offer for said property and decides that he wishes to sell same, then and in that event, Lessee shall be given the option of buying said property at the price which Lessor has been offered for the same, Provided he exercises said option within five (5) days after notice from Lessor of the offer which he has received."

Plaintiff duly entered into possession under said lease and has since operated on the premises a liquor store from which he has received a rather lucrative income.

Defendant owned another lot fronting 50 feet on Kennedy Street, adjacent to and of the same size as the lot leased to plaintiff, upon which there was operated a barbecue stand and beer parlor. Sometime in June, 1950, Harold E. McElhanney, a Spartanburg business man, through T. J. Willard, a local real estate agent, approached defendant and inquired if he would be interested in selling both lots, having a combined frontage of 100 feet on Kennedy Street, for $18,000.00. Defendant replied that he was not in a position to sell until he had an opportunity of contacting plaintiff and ascertaining whether he wished to exercise the option contained in his lease. There is some conflict in the testimony as to the date on which plaintiff was notified of this offer and as to his response.

According to Willard, the real estate agent, plaintiff must have been contacted on June 13th or 14th since Willard said that on the latter date defendant reported to him that he had just discussed the matter with plaintiff who said he was not interested in buying the property. Defendant thereupon stated to Willard that he was ready to enter into the contract with McElhanney. This contract was promptly prepared and executed on June 14, 1950. It provided for a sale of both lots, subject to existing leases thereon, to McElhanney for $18,000.00, $1,000.00 of which was paid at the time of execution.

Plaintiff's version, which must be accepted in passing on a nonsuit, is as follows: On Friday, June 16th, defendant notified him of the McElhanney offer and inquired if he was interested in buying the two lots at that price. He replied that he would be unable to give an answer until he contacted his banker with reference to a loan. After seeing his banker the next day, he endeavored to get in touch with defendant so as to notify him that he would take both lots at the price of $18,000.00. After he was unable to locate defendant, he consulted his attorney who thereafter advised him as to all steps taken and prepared the letters hereinafter mentioned.

On June 19th plaintiff wrote defendant a letter, which was delivered in person on the same date, stating that he was exercising the option to buy the lots for $18,000.00 which he was ready to pay upon delivery of deed conveying good title, and requesting defendant to forward a contract of sale at his earliest convenience. Upon reading the letter, defendant told plaintiff that he had already signed a contract with another party (whom plaintiff later learned to be McElhanney) on which a deposit had been made, but felt that he could get out of that contract and would let plaintiff have the property.

On June 21st plaintiff wrote defendant a letter, which was delivered in person to an employee in the latter's office, in which it was stated: "After I delivered my letter to you dated June 19, 1950, stating that I have decided to exercise my option and buy the property therein mentioned for $18,000.00 cash, you have informed me that you had signed an agreement to sell this property to another party, but that you would attempt to get out of this agreement with the other party and sell the property to me." Plaintiff then mentioned several matters connected with the title which should be corrected and further called attention to the fact that defendant had given a mortgage on the property for $19,500.00 which would have to be released. Plaintiff concluded

the letter by saying that he was prepared to pay cash for the property upon delivery of the deed conveying good title.

Several days after the foregoing letter was written, defendant saw plaintiff and stated that he was having trouble getting out of the agreement but that he had received an offer of $12,000.00 for the property leased by plaintiff. Plaintiff then asked defendant to give him written notice of such an offer. This was not done and on June 26, 1950, plaintiff wrote defendant as follows:

"Subject to my rights to proceed against you for breach of contract in failing to deliver me a deed to the 100 feet of property on Kennedy Street owned by you and occupied by me and McClesky, at the price of $18,000.00, I hereby exercise my option to purchase from you the 50 feet frontage on the South side of Kennedy Street running back 140 feet to alley, being the property owned by you and occupied by me under lease from you, at the price of $12,000.00 cash.

"I am prepared to pay cash for this property upon your delivering to me a good, clear and marketable title in and to this property in fee simple, freed and discharged from all legal claims against same. Kindly advise in writing that you are deeding me this property for this price and when you will be ready, able and willing to deliver such title to me, and oblige."

Notwithstanding the foregoing correspondence, the defendant apparently intended carrying out his contract with McElhanney. Sometime during the latter part of June, the record not disclosing the exact date, defendant's attorney requested the real estate agent to inquire of McElhanney if the latter would be agreeable to taking title by two deeds, one in consideration of $12,000.00 covering the premises occupied by plaintiff and the other in consideration of $6,000-.00 covering the lot on which the barbecue stand was conducted. McElhanney stated that he had no obligation to this arrangement. Deeds on this basis were accordingly prepared and the parties, along with their attorneys, met in the office

of defendant's attorney on June 30, 1950, for the purpose of closing the transaction. Counsel representing McElhanney and a bank which was going to make a loan to him brought up the question of the option in plaintiff's lease and stated that he could not pass title unless the purchaser was given some assurance or guaranty against loss on account of said option. Defendant, on advice of his attorney, refused to do so. For that reason the proposed sale of both lots to McElhanney fell through and the contract with him was never consummated. After this occurred defendant refunded to McElhanney the $1,000.00 binder paid at the time of the execution of the contract and in addition, paid Willard a commission in connection with the proposed sale.

On July 1, 1950, defendant's attorney wrote a letter to plaintiff stating that his client had received an offer of $12,-000.00 for the property leased to plaintiff and that the defendant was ready to sell and convey said property to him at that price if the offer was accepted within five days. Plaintiff decided to buy and thereafter on July 6, 1950, defendant conveyed said lot to him for a consideration of $12,000.00.

Shortly thereafter Willard, the real estate agent, negotiated a sale to McElhanney of the adjacent lot upon which the barbecue stand was operated for $7,500.00 and on July 12, 1950, defendant conveyed this lot to McElhanney.

Nothing further was done until this action was commenced on December 24, 1951. Plaintiff set out the foregoing facts in his complaint and further alleged that defendant had failed and refused to comply with the contract to sell him both lots for $18,000.00; and that although each lot was of approximately the same value, defendant falsely represented that he had received an offer of $12,000.00 for the lot leased by plaintiff, which misrepresentation was made "with the intention of misleading plaintiff into either paying the $12,000.00 for said lot or losing his right to purchase same at the same price which a third party offered for same." The last paragraph of the complaint is as follows:

"On information and belief alleges that as the direct, proximate and foreseeable result of defendant's actions above mentioned, all of which were fraudulent, and part of a fradulent scheme, whereby defendant intended to and did mislead plaintiff into acting to plaintiff's injury by leasing property from defendant and building up thereon a business licensed only to operate in said location, under protection of an option to purchase said property, and then paying $12,-000.00 for approximately one-half the value of the two 50-foot lots, both of which plaintiff was entitled to have deeded to him by defendant for $18,000.00, plaintiff has suffered damages from relying upon defendant's misrepresentations (concerning which he had no reasonable means of determining the truth with certainty), in the amount of $17,550-.00, actual and punitive damages."

Throughout this litigation there has been difficulty in determining the precise basis upon which plaintiff seeks to recover. On the previous appeal counsel for both parties conceded that the complaint stated several causes of action but there was never any motion by defendant to require plaintiff to separately state them or to make his complaint more definite and certain. At the threshold of the trial the question arose as to the proper construction of the complaint which brought on an extended colloquy, which finally concluded as follows:

"The Court: I want to know how many causes of action.

"Mr. Dunbar: We are standing on the fact, on these facts: that he was obligated to give us the right to buy at the same price he was offered, even in combination with other properties, of our property. We were also entitled to buy it at the same price offered for that particular property. Now, in this case, he never received an offer for $12,000.00 which he represented to us, but received a combined offer of $18,-000.00 for the two. And having received that, he was under obligation under the lease to sell the two for $18,000.00, or to convey us the one for half the value, which would have been $9,000.00. * * *

"The Court: Then you stand on the provision contained in your lease to the effect that he was obligated to sell you that lot of land at a certain price and failing to do that, breached the contract?

"Mr. Dunbar: At the same price offered by a third party—

"The Court: That's right. Same price offered by a third party. * * *

"The Court: And in failing to do that and demanding a greater price, he breached the contract with a fraudulent act?

"Mr. Dunbar: That's it.

"The Court: One cause of action, and that would be on the breach of the provisions contained in the contract itself?

"Mr. Butler: In respect to the property involved in the lease.

"The Court: The property involved in the lease only.

"Mr. Dunbar: If Your Honor please, I have it in respect to the property involved in the lease, either separately or in combination. * * *

"The Court: But there can be no recovery on the alleged —if there be an alleged cause of action—for the breach of the contract to sell the two tracts of land?

"Mr. Butler: Or the unleased lot.

"Mr. Dunbar: I think that gets it clear, Your Honor.

"Mr. Butler: The only thing that I am concerned with now,—did I understand Your Honor ruled on it? There is one cause of action based on allegedly inducing Mr. Smith, through a fraudulent system, or scheme, or whatever it may be, to pay $12,000.00 for the leased property when it wasn't worth $12,000.00, and that there is no cause of action contained in the complaint that we are proceeding on with respect to any breach of any $18,000.00 contract, or to buy the unleased lot?

"The Court: You are correct to this extent, Mr. Butler. On the contract, or the lease, it is provided they should sell that property covered by the lease for the same price that he sold it to, or had a bona fide offer of a third party therefor. Now, as I understand it, the—he sold it, the bona fide offer

actual value would have been $9,000.00. Instead, he sold it for $12,000.00 to him. Now, if facts establish that irrespective of any fraud, then I think he would be entitled to recover as actual damages, $3,000.00, the difference between the price paid and the value of the property.

"Mr. Butler: Any right to recover would still be restricted—

"The Court: Only to that lot covered by that lease.

\* \* \*

"Mr. Dunbar: You are limiting me in the breach of contract to the breach of this written contract, and whatever phase that is?

"The Court: That is correct.

"Mr. Dunbar: And not of any oral contract?

"The Court: That is correct.

"Mr. Dunbar: But if it was in this written contract, that he was entitled to be conveyed two pieces for $18,000.00, the breach of that contract, he would be entitled to show under the written lease but not under the oral contract?

"The Court: You can show it but you are not going to recover on it.

"Mr. Dunbar: Can't he recover if he, under the lease, was required to convey us the one lot at the same price anybody else, and then goes and conveys to somebody else, in combination with this lot, the two pieces, that he would then breach his option to convey at the same price: Just like the Virginia case?

"The Court: I don't think so. I think you are entitled to recover only on one contract, if at all. If you recover actual damages, under certain conditions—there's no use to repeat that—actual and punitive damages—if you can establish that that contract was violated or breached, accompanied by a fraudulent act or acts, is that right?

"Mr. Dunbar: Well, if during the trial anything further should develop I imagine your Honor would let us, at that time—

"The Court: Oh, of course. I can only rule on one proposition at a time."

We are not at all sure that we yet understand upon what cause of action plaintiff seeks to recover. Apparently the trial Judge concluded that the action was one for fraud and deceit since he granted a nonsuit upon the ground that there was no evidence of fraud. On the motion for a new trial, counsel for plaintiff contended that he was entitled to go to the jury on a cause of action for breach of contract independently of whether he established fraud, and, further, that the Court erred in concluding that there was no proof of fraud. In the order granting a new trial, the trial Judge merely stated that there was testimony warranting submission of the case to the jury but gave no reason for this conclusion.

We shall first determine whether there is any evidence establishing a cause of action for fraud and deceit. The claim of fraud seems to rest primarily upon the allegation that defendant falsely represented that he had an offer of $12,000.00 for the property leased to plaintiff. To establish this fact counsel for plaintiff called defendant as a hostile witness. Defendant testified positively that about June 16, 1950, he received an offer from a Mr. Edwards, who was fully identified, of $12,000.00 for the lot occupied by plaintiff. This testimony is uncontradicted. Although Mr. Edwards was apparently available, he was not called as a witness by plaintiff. There is, therefore, no proof that the representation complained of was false.

Counsel for plaintiff seeks to infer bad faith from the fact that defendant arranged with McElhanney to convey the two lots by separate deeds in which the consideration for the liquor store lot was to be $12,000.00. It is argued that this was done for the purpose of making it appear that McElhanney had offered $12,000.00 for the lot leased to plaintiff when, in fact, McElhanney's offer was $18,000.00 for both lots. This arrangement could not have been made, however, with the intent to deceive the plaintiff, for at that time all

parties had reason to believe that the McElhanney sale would be consummated and, in fact, it would have been except for the refusal of defendant to agree to indemnify or guarantee McElhanney against any loss resulting from the option contained in plaintiff's lease.

It is our conclusion that there is no evidence reasonably warranting an inference of fraud. This seems to be the gravamen of plaintiff's case. However, plaintiff asserts that the complaint also states a cause of action for breach of contract which is not dependent on proof of fraud. Assuming that it does, there can be no recovery on this theory.

We are not concerned in this case with any right on the part of the plaintiff to an injunction forbidding defendant from carrying out his contract with McElhanney. No such relief was ever sought and, in fact, that contract was abandoned by the parties. Assuming, without deciding, that from the McElhanney transaction there arose an obligation on the part of the defendant to sell plaintiff both lots for $18,-000.00, there can be no recovery on such an obligation in view of the ruling of the trial Judge the correctness of which has not been challenged on this appeal, that plaintiff would be restricted to an alleged breach to sell the lot occupied by him and could not recover for any alleged breach to sell both lots.

Plaintiff's claim of damages apparently rests upon the premise that since defendant had received an offer, which he was willing to accept, of $18,000.00 for both lots, which plaintiff says were of equal value, he had a right under his option to require defendant to sell the liquor store lot for one-half of this amount, or $9,000.00. However equitable this may seem, it has no sound legal foundation. The defendant may or may not have regarded the lots of equal value and it was for him to decide. It is not for the courts to undertake to apportion the fair value of the liquor store lot to the amount at which defendant proposed to sell both lots. The defendant could not be compelled to sell one of these lots if he only desired to sell them as a whole. See

*New Atlantic Garden v. Atlantic Garden Realty Corp.,* 201 App. Div. 404, 194 N. Y. S. 34, and annotation in 170 A. L. R., beginning on page 1068.

There is another reason why plaintiff cannot recover for any alleged breach of contract to sell him the lot which he occupied. We have concluded that the defendant received an offer from a third party for $12,000.00 for this lot. When notified of this offer, plaintiff, with full knowledge of all the facts, elected under his option to buy at that price. It is difficult to see under these circumstances how there could remain any cause of action for failure to sell him this lot. There has now been full compliance with the option.

The order appealed from is reversed, the order of nonsuit reinstated and case dismissed.

STUKES, TAYLOR and LEGGE, JJ., and J. WOODROW LEWIS, Acting Associate Justice, concur.